# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOHNSON FINANCIAL GROUP, INC., <br><br>                  Plaintiff, <br><br> v. <br><br> PATRICK MCGILL, <br><br>                  Defendant. | Case No. 20-CV-1319-JPS <br><br><br> **ORDER** |

### 1.     INTRODUCTION

On August 27, 2020, Defendant Patrick McGill ("McGill") removed the above-captioned case initiated by Plaintiff Johnson Financial Group, Inc. ("JFG") from state court to this Court. (Docket #1). On September 8, 2020, McGill moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Docket #7). That motion is fully briefed, and, for the reasons stated herein, the motion will be denied.

### 2.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss on the ground that the court lacks jurisdiction over him. Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of establishing personal jurisdiction when the defendant contests it. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). However, in cases such as this one, where the matter is decided on a motion to dismiss and without an evidentiary hearing, a plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). "Personal jurisdiction must be established separately with respect to each claim and

each defendant." *Jefferson Elec., Inc. v. Torres*, No. 09-C-465, 2009 WL 4884379, at *1 (E.D. Wis. Dec. 10, 2009).

Unlike some other challenges to a plaintiff's complaint, when questions of personal jurisdiction arise, a court may consider affidavits and other evidence outside of the pleadings. *Purdue Rsch. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Indeed, a court may "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Nevertheless, the court will "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Purdue*, 338 F.3d at 782; *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

3. **RELEVANT FACTS AND PROCEDURAL HISTORY**

JFG is a financial management company that offers personal and commercial banking, insurance, and wealth management services. (Docket #1-1 at 5). Johnson Wealth, Inc. ("JWI") is a registered investment advisor ("RIA") and a wholly-owned subsidiary of JFG, with its principal place of business in Milwaukee, Wisconsin. (*Id.*) The "Pilot Program" is a group within JWI that provides wealth management services tailored to commercial airline pilots across the United States. (*Id.*) The Pilot Program's wealth management services include preretirement planning, such as 401K, life insurance, and risk management. (*Id.*)

On January 30, 2015, Cleary Gull Advisors, Inc. (which JFG would later acquire), hired McGill as a Retirement Consultant in Milwaukee, Wisconsin. (*Id.*) When JFG acquired Clearly Gull, Inc., McGill continued in his sales role in the Pilot Program. (*Id.*) On March 28, 2016, McGill entered into an agreement in connection with his employment with JFG (the

"Agreement"). (*Id.*) The Agreement contained a non-solicitation provision that restricted McGill from soliciting JFG's clients and employees. (*Id.* at 5–6).

Additionally, as a member of the Pilot Program, McGill was subject to its client-relationship and portfolio-management procedures. (*Id.* at 6). Under such procedures, the Pilot Program's Retirement Consultants are charged with soliciting and securing relationships with prospective clients and acting as the initial contact for prospective clients. (*Id.*) Once a client relationship is established, the account relationship is transitioned to a Relationship Manager, who takes over as the primary contact for a client. (*Id.*) The Relationship Manager is then responsible for the day-to-day communications with the client, as well as the maintenance of the client's financial and retirement plan. (*Id.*) A Portfolio Manager is also assigned to the new client account and is responsible for the client's investment portfolio and asset allocation. (*Id.*) At this point, a Retirement Consultant no longer provides any services to or communicates with the client. (*Id.* at 6–7).

Both Relationship Managers and Portfolio Managers take advantage of JFG's cloud-based management system, "Maximizer." (*Id.* at 7). The information stored on Maximizer pertains to JFG's clients across the United States. (*Id.*) It includes names, addresses, correspondence, and financial information, as well as proprietary financial planning processes and investment philosophies. (*Id.*)

In 2018, after two years of employment with JFG in Milwaukee, McGill moved from Milwaukee to Oceanside, California. (*Id.*) JFG provided McGill a $15,000 stipend to move from Wisconsin to California, which McGill agreed to reimburse to JFG if he voluntarily terminated his

employment with JFG within two years of his relocation. (*Id.*) From California, McGill continued to work for JFG in the same role. (*Id.*) He reported to a supervisor in Milwaukee, and he received regular paychecks from Wisconsin. (Docket #10 at 3). In April 2019, McGill was promoted to be a Vice President Wealth Advisor. (Docket #10-3 at 3). In a memorandum conveying this promotion, he was told he would receive additional vacation benefits and would have to sign a non-solicitation agreement. (*Id.*)

In July 2019, McGill attended a two-day training program sponsored by JFG in Delafield, Wisconsin. (Docket #1-1 at 7). After the second day of training, McGill met with Chuck Allison ("Allison"), a Vice President and Relationship Manager at JFG and a member of the Pilot Program. (*Id.*) JFG alleges that, during the meeting, McGill informed Allison that he was thinking of starting his own firm and that he wanted Allison to join his firm. (*Id.*) McGill told Allison he believed that they could make more money at their own firm. Allison informed McGill that he did not want to leave JFG. (*Id.* at 8). Then, in February 2020, McGill again approached Allison with the idea of forming their own firm. (*Id.*)

JFG believes that, during at least the last year of his employment, McGill intentionally and deliberately maintained close contact with clients whose business he had originally secured for JFG but whose accounts were supposed to be transitioned to Relationship and Portfolio Managers. (*Id.*) JFG believes McGill's purpose was to stay close to those clients and cause them to view McGill as their primary financial advisor, thereby interfering with the clients' relationships with JFG. (*Id.*) JFG alleges that McGill circumvented the Pilot Program's processes and procedures by selectively updating, misrepresenting, and excluding information from numerous client accounts in Maximizer. (*Id.*) This also may have included McGill

offering off-brand financial advice to clients. (*Id.* at 9). JFG maintains that some of these clients were residents of Wisconsin. (Docket #10 at 3).

Eventually, JFG alleges, McGill began advising certain clients of his plans to leave JFG months before he actually resigned. (Docket #1-1 at 10). This advice turned into McGill soliciting clients to move their business from JFG to McGill's new firm. On May 22, 2020, McGill resigned from JFG. (*Id.* at 11). He began new employment with Howard Capital Management, Inc. ("Howard"), a firm with its principal place of business in Roswell, Georgia. (*Id.*) This resignation was within two years of his relocation; accordingly, JFG demanded that McGill return the relocation stipend. (*Id.* at 11–12).

Upon McGill's arrival at Howard, Howard began offering management services to commercial airline pilots—McGill was hired to begin this program. (*Id.* at 11). Two days after McGill began working for Howard, numerous JFG clients received paperwork to transfer their accounts from JFG to Howard. (*Id.*) By June 3, 2020, three clients had terminated their relationships with JFG and transferred their accounts to Howard. (*Id.*) Together, these clients' portfolios were worth approximately $3.4 million. (*Id.*)

JFG believes that a total of twelve clients have or will terminate their relationships with JFG and transfer their accounts to Howard. (*Id.* at 12). This brings the total loss of accounts to an estimated $14.2 million. (*Id.*) Additionally, McGill has not returned the $15,000 relocation stipend to JFG. (*Id.*) JFG brought suit in Wisconsin court against McGill for two counts of breach of contract (one for violation of the non-solicitation provision, the other for violation of the relocation stipend agreement), one count of breach of fiduciary duty, one count of tortious interference with contract, and one count of misappropriation of trade secrets. (*Id.* at 11–15). McGill then

removed the action from state court to this Court, (Docket #1), and moved to dismiss for lack of personal jurisdiction, (Docket #7).

4.  **ANALYSIS**

Personal jurisdiction refers to a court's power over parties, in contrast to subject-matter jurisdiction, which is a court's power over certain types of claims. When, as here, a federal court exercises diversity jurisdiction over a case, it will exercise personal jurisdiction over a nonresident defendant only if a court of the state in which the federal court sits could do so. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 665 (7th Cir. 1986). In Wisconsin, this normally entails a two-part analysis, in which a court first asks whether the state's long-arm statute encompasses a defendant's conduct, and second, considers whether exercising personal jurisdiction would comport with principles of due process. *Id.*

   4.1  **Wisconsin's Long-Arm Statute**

Under Wisconsin's long-arm statute, "a plaintiff can establish personal jurisdiction by showing either specific or general jurisdiction." *Kubin-Nicholson Corp. v. Gillon*, 525 F. Supp. 2d 1071, 1073 (E.D. Wis. 2007). "Specific jurisdiction generally exists when the litigation arises out of the defendant's contacts with Wisconsin and applies even to a defendant who has otherwise had only minimum contacts with Wisconsin." *Id.* General jurisdiction, on the other hand, "requires that a defendant have more substantial contacts with Wisconsin but authorizes a court to entertain any action against the defendant regardless of its subject matter." *Id.* When applying the Wisconsin long-arm statute, a federal court must "defer to the Wisconsin court's interpretation of the statute and . . . liberally construe it in favor of exercising jurisdiction." *Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 995 (E.D. Wis. 2003). The Wisconsin long-arm statute

"provides jurisdiction to the full extent provided by due process." *Id.* Here, Plaintiff argues that this Court has specific jurisdiction under Wisconsin Statute section 801.05(8) and general jurisdiction over Defendant under Wisconsin Statute section 801.05(1)(d). (Docket #10 at 5).

Section 801.05(8) provides that a court in Wisconsin may maintain personal jurisdiction

> [i]n any action against a defendant who is or was an officer, director or manager of a domestic corporation or domestic limited liability company where the action arises out of the defendant's conduct as such officer, director or manager or out of the activities of such corporation or limited liability company while the defendant held office as a director, officer or manager.

Wis. Stat. § 801.05(8). In other words, section 801.05(8) "treats a manager of a Wisconsin corporation as having consented to the state's jurisdiction." *Kubin-Nicholson Corp.*, 525 F. Supp. 2d at 1074 (finding a court had specific jurisdiction under section 801.05(8) over an out-of-state defendant employed as a manager for a Wisconsin corporation).

In the present case, JFG alleges that McGill was a vice president at JFG. JFG states that McGill was hired in 2016 as a Retirement Consultant and was subsequently promoted to Vice President Wealth Advisor on April 1, 2019, several months after he moved to California. (Docket #1-1 at 5; #10 at 6). In support, JFG provides the memorandum sent to McGill informing him that he was being promoted to Vice President Wealth Advisor, (Docket #10-3 at 3); this memorandum informed McGill that he would be receiving additional vacation days and would be required to sign a non-solicitation agreement, (*id.*). JFG also submits affidavits from its employees, such as the Vice President of Senior Human Resources, affirming McGill's position as an "Officer Wealth Advisor/Retirement Consultant" and subsequently a

Vice President Wealth Advisor. (*Id.* at 1–2; #10-1 at 1–2). JFG alleges that, as an officer and a vice president, McGill had authority, obligations, expectations, and responsibilities above and beyond those of other JFG employees. (Docket #10 at 6).

McGill urges the Court to disregard JFG's statements and affidavits about McGill's title and job description as being unsupported and lacking sufficient detail and because McGill refutes the statements made therein. (Docket #13 at 10–13). McGill also attaches to his reply brief an affidavit in which he attests that that he was never informed of the specific job duties that came with his promotion to Vice President Wealth Advisor. (Docket #13 at 12; #14).

The burdens of the parties, as well as the Court's role in evaluating the parties' submissions, is summarized by the following:

> The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held. When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence. However, when the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff need only make out a prima facie case of personal jurisdiction. In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.

*Purdue*, 338 F.3d at 782 (internal quotations and citations omitted).

McGill argues that (1) JFG has not shown the specifics of McGill's duties as a vice president, and (2) McGill was not responsible for those unspecified duties. To the extent that McGill wishes to argue that his title as Vice President did not actually impute upon him the responsibilities of an officer, director, or manager, such that he would be covered under

section 801.05(8), he has offered no argument or case law. JFG has provided evidence that McGill was promoted to Vice President—a promotion that came with new benefits of employment as well as an obligation to sign a non-solicitation agreement—and affidavits stating that he was, in fact, a Vice President with heightened responsibilities. Plaintiff has made a prima facie showing, and the Court is unconvinced by McGill's briefing that such a showing is insufficient.

The Court finds that McGill falls within the coverage of section 801.05(8) of Wisconsin's long-arm statute. Thus, the Court need not address whether the Court has general jurisdiction over McGill and will turn to considerations of Due Process.

### 4.2 Due Process

The Due Process Clause of the Fourteenth Amendment protects a defendant from being haled into court in a state where he has no meaningful connections. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). Due process requires that, for personal jurisdiction to exist over a nonconsenting, out-of-state defendant, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). If a party meets the requirements of the long-arm statute, there is a rebuttable presumption that constitutional due process is also satisfied. *Kubin-Nicholson Corp.*, 525 F. Supp. 2d at 1073.

When the Court is proceeding under specific personal jurisdiction, the standard for determining whether such jurisdiction comports with due process "may be condensed to three essential requirements:"

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, *Burger King*, 471 U.S. at 472 . . .; (2) the alleged injury must have arisen from the defendant's forum-related activities, *id.*; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice, *Int'l Shoe*, 326 U.S. at 316, 66.

*Felland*, 682 F.3d at 673.

### 4.2.1 Conduct "purposefully directed" at the forum state

McGill's contacts with Wisconsin are as follows. He began his employment with a Wisconsin-based employer in 2016 while he lived in Wisconsin. The Wisconsin-based employer, JFG, then permitted McGill to work from California and funded his move. Once in California, McGill's relationship with JFG in Wisconsin remained largely the same: he reported directly to a supervisor located in Wisconsin; he traveled to Wisconsin on JFG business; he continued to receive the benefits of his employment with JFG (e.g., paychecks from Wisconsin, subscriptions to news services and professional networking tools, and license renewal fees). McGill also used JFG property (a laptop) to conduct his job. McGill continued to provide investment management services under JFG's status as an RIA, something McGill—who is not individually registered as an RIA with the Securities and Exchange Commission—could not have done but for JFG's status as such. These contacts continued until McGill resigned in May 2020, shortly before this suit commenced. Further, some of McGill's alleged bad conduct seems to have been directed toward clients in Wisconsin.[1]

---

[1] McGill argues that the Court should not accept these facts for purposes of this Order because JFG has failed to meet its burden as it relies on declarations, (Docket #10-1, #10-2, #10-3, #10-4), which McGill urges are "conclusory and otherwise devoid of facts." (Docket #13 at 9). However, as noted earlier, "when the

The facts in this case are comparable to those in *Kubin-Nicholson Corp.*, 525 F. Supp. 2d 1071. There, the defendant-employee was sued for "breach[ing] his employment contract and wrong[ing] plaintiff in other ways by working clandestinely with a competitor." *Id.* at 1073. The court held that the defendant had substantial contacts with Wisconsin where:

> [the defendant] voluntarily sought and obtained employment from plaintiff, which is located in Wisconsin, and then nurtured and maintained an employee-employer relationship with plaintiff for twenty-three years. During this period, [the] defendant had numerous contacts with Wisconsin. He initiated weekly, sometimes daily, telephone and e-mail contacts with plaintiff in Wisconsin; used [the] plaintiff's corporate computer network, the server for which is located in Wisconsin; received a regular paycheck from Wisconsin; and attended business meetings in Wisconsin about four times each year. He reported directly to . . . [the] plaintiff's president and CEO in Wisconsin, rather than to anyone in New York.

*Id.* at 1074.

McGill, through his employment with JFG, has shared in the many benefits that Wisconsin offers to its businesses. *See id.* ("Defendant's employment-related contacts highlight the fact that as a long-time employee of a Wisconsin company, defendant shared in the many benefits that Wisconsin offers to its businesses."). McGill cannot now avoid litigation in the state from which he has received such benefits.

---

district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue*, 338 F.3d at 782 (internal quotation and citation omitted). And, "[i]n evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal quotation and citation omitted).

### 4.2.2 Injury "arises out of" the defendant's contacts with the forum state

JFG has also sufficiently argued that the claims brought in this suit arise out of McGill's conduct as a vice president of JFG, a Wisconsin company. The counts in this suit concern McGill's alleged violations of the non-solicitation agreement he entered into with JFG as a term of his promotion to Vice President Wealth Advisor, as well as the duties he had toward JFG. Moreover, JFG alleges that some of McGill's alleged bad conduct seems to have been directed toward JFG's clients in Wisconsin, and some of his communications with those clients occurred while he was in Wisconsin. These contacts "bear on the substantive legal dispute between the parties [and] relate to the operative facts of the case." *GCIU-Emp. Ret. Fund*, 565 F.3d at 1024.

### 4.2.3 Traditional notions of fair play and substantial justice

The following factors are relevant in determining whether the exercise of personal jurisdiction over an out-of-state defendant would offend traditional notions of fair play and substantial justice: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477.

Certainly, the burden of litigation on McGill is greater if he is required to litigate this matter in Wisconsin rather than California—but this is the only factor McGill points to in his favor. (Docket #8 at 21). JFG sufficiently alleges that McGill repeatedly violated a contract with a Wisconsin corporation, violated his duty of loyalty as an officer of that

corporation, tortiously interfered with the corporation's contacts with its clients, and misappropriated the corporation's trade secrets, all while employed by that Wisconsin corporation. This suit is precisely the kind of case that Wisconsin has an interest in providing a convenient forum for its residents. Litigating this matter in Wisconsin is clearly more convenient for JFG. The remaining factors are neutral, as McGill seems to admit. (*Id.*)

5.  **CONCLUSION**

Based on the above, the Court finds that McGill has sufficient contacts with Wisconsin as to allow to the Court to maintain personal jurisdiction over him. The Court will deny McGill's motion to dismiss, (Docket #7).

Accordingly,

**IT IS ORDERED** that Defendant Patrick McGill's motion to dismiss (Docket #7) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of May, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge